**Robert E. HILL, Plaintiff,**

**v.**

**GENERAL MOTORS CORPORATION; Local 1173, United Automobile, Aerospace and Agricultural Implement Workers of America; and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Defendants.**

**No. CIV–86–545C.**

United States District Court, W.D. New York.

Oct. 31, 1988.

Terranova, Seeger & Galeziowski (John A. Galeziowski, of counsel), Buffalo, N.Y., for plaintiff.

Raichle, Banning, Weiss & Stephens (Arnold Weiss, of counsel), Buffalo, N.Y., for defendant Gen. Motors Corp.

Lipsitz, Green, Fahringer, Roll, Schuller & James (Richard Lipsitz, of counsel), Buffalo, N.Y., for UAW defendants.

CURTIN, Chief Judge.

Pending before the court in this action under 29 U.S.C. § 185 is defendants' motion to dismiss the complaint and/or for summary judgment on the ground that plaintiff has failed to exhaust the internal remedies available to him under the Constitution of the International Union, United Automobile, Aerospace and Agricultural Workers of America [UAW]. Item 22. Also pending is defendants' motion to strike plaintiff's demand for a jury trial. *Id.* Defendants UAW and General Motors have now responded to this court's order dated October 13, 1987 (Item 39), directing them to answer certain specific questions as a means of providing further factual and legal support for their positions.[1]

The factual background of this case, as well as the details of defendants' arguments in support of (and plaintiff's arguments in opposition to) the motion to dismiss, as set forth more fully in the October 13, 1987, order, can be briefly stated as follows. Plaintiff was discharged from employment with defendant General Motors on December 21, 1979, and filed a grievance that same day claiming wrongful discharge and requesting reinstatement or reduction of his disciplinary penalty. He later filed two additional grievances arising out of this same incident. On March 18, 1983, by agreement with General Motors and pursuant to then-current union procedure, UAW withdrew plaintiff's grievances without prejudice. It is a matter of dispute as to the exact time at which plaintiff was notified of this withdrawal; defendants claim that plaintiff was notified orally sometime in December, 1983 (approximately 9 months after the withdrawal, and 4 years after the filing of the initial grievance) (*see* Item 39, p. 2 n. 2), and plaintiff contends that he did not become aware of the withdrawal until he was notified in December, 1985 (approximately 2½ years after the withdrawal, and 6 years after the filing of the initial grievance) (*see* Item 27, p. 1).[2] Whatever date he was notified, plaintiff took no steps to exhaust the union's internal dispute resolution procedures

---

1. Those questions were:
 1. Is it ever the case that the length of time required for the UAW to decide to withdraw the grievance can constitute "undue delay" which would permit the plaintiff to skip the inter-union procedures entirely and come directly to federal court? Give authority for your position.
 2. What length of time would an inter-union grievance procedure have to be before it "unduly delays" the resolution of plaintiff's dispute? If no specific time can be supplied, how is this determination made? Give authority for your position.
 3. Give a complete list of all remedies available by persons such as plaintiff against a) the UAW, and b) General Motors, by successfully completing inter-union appeal procedures. Cite supporting authority for each and every remedy.

4. In a case like the instant one, does plaintiff's claim accrue a) when his grievance is withdrawn? b) when he has "reasonably" exhausted his inter-union remedies? c) when he has completely exhausted his inter-union remedies? or d) at some other time? Give complete authority and explanation for your position. *See* Item 39, pp. 8–9.

2. Plaintiff claims that he was never formally notified by the union that his grievances had been withdrawn. He says that he learned from his local union committeemen in December, 1985, "that the grievances had probably been dropped", Item 27, p. 1, and that "[i]t was not until receipt of GM's motion papers on May 7, 1987, that plaintiff's counsel learned that Mr. Hill's grievances were indeed withdrawn during March of 1983." *Id.*

before bringing this "hybrid" breach of agreement/breach of duty of fair representation action, pursuant to § 301 of the Labor–Management Relations Act [LMRA], 29 U.S.C. § 185, on June 5, 1986, seeking reinstatement, back pay, damages, and other equitable relief. *See* Items 1, 22, 39.[3]

Plaintiff claims that his discharge was not for cause, and thus constituted a breach by General Motors of the collective bargaining agreement. Item 1, ¶¶ 28–32. Plaintiff also claims that, as a result of its failure to pursue his grievances and its failure to properly inform him of the status of those grievances, UAW breached its duty of fair representation. *Id.*, ¶¶ 33–52. As a basis for his claims, plaintiff argues that: 1) the internal union appeal procedures are unreasonable as a matter of law; 2) the remedies provided by the internal procedures are inadequate; 3) exhaustion of internal union appeals would unduly delay judicial consideration of plaintiff's claims; 4) defendants should be estopped from invoking the exhaustion defense because of the union's failure to fully and properly inform the plaintiff of the resolution of his grievance and the internal remedies available; and 5) evidence of union officials' hostility toward the plaintiff precludes the granting of defendants' motion to dismiss. *See* Item 32, pp. 1–2; Item 39, p. 3. Defendants now move to dismiss based on the contentions that 1) plaintiff

has shown no basis to support a finding that the withdrawal of his grievance was done other than in good faith, and 2) the unexhausted internal union remedies afford him a fair opportunity to fully present any claim he may have against the company. Item 39, pp. 2–3.

In response to the court's questions (*see* note 1, *supra*, for the text of those questions), UAW directs the court's attention to the affidavits of Gary Bryner (Item 45) and Robert Rowe (Item 44). UAW says that on the basis of the General Motors–UAW National Agreement (which incorporates Articles 32 and 33 of the UAW Constitution [4] and the "Reinstatement of Grievances Letter" [5]), the answer to Questions 1 and 2 is that exhaustion of internal remedies is always required, regardless of the length of time involved in the process of deciding whether or not to withdraw a grievance. Item 41, p. 8. As authority for this position, UAW cites *Clayton v. Automotive Workers*, 451 U.S. 679, 691 n. 18, 692 n. 20, 101 S.Ct. 2088, 2097 n. 20, 68 L.Ed.2d 538 (1981) (where reinstatement of withdrawn grievances is provided for through collective bargaining, union's internal appeal procedures would be adequate, and employer or union could assert "failure to exhaust" defense), and the more recent case of *United Paperworkers v. Misco*, —— U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (grievance and arbitration procedures of collec-

**3.** On March 10, 1987, counsel for plaintiff informed the court that plaintiff Robert E. Hill had died, and that counsel intended to substitute the estate representative, executrix Alice J. Hill, as plaintiff. Item 12. The motion to substitute was made and granted on March 31, 1987. For the purpose of continuity, this order continues to refer to plaintiff in the masculine gender.

**4.** Article 32 deals with the establishment and operation of a Public Review Board [PRB] to handle grievances of union members. Article 33 deals with inter-union appeals procedures, and provides in relevant part:

> The normal route of appeal is: FIRST, to the membership or delegate body immediately responsible for the official, officer, action or decision under challenge; SECOND, to the International Executive Board [IEB], unless the appeal begins there; and THIRD, to the Convention Appeals Committee [CAC] or Pub-

lic Review Board, as may be appropriate. This normal route of appeal shall be followed in all cases, except where this Constitution makes specific provision for an alternate route of appeal.

UAW Constitution, Article 33, § 2(a). *See* Exh. 1, incorporated with affidavit of Carolyn Forrest, attached to Item 19.

**5.** The "Reinstatement of Grievances Letter" dated November 18, 1976, and its successor Letter Agreements, dated September 19, 1979, March 21, 1982, and September 21, 1984, were negotiated on the dates indicated as part of the National Agreements between General Motors and the UAW. The Letter Agreements provide that, in all cases settled on or after December 13, 1976, a grievance that was formerly disposed of may be reinstated in the grievance procedure at the step at which the original disposition of the grievance occurred. *See* Exhs. incorporated with affidavit of Robert Walker, attached to Item 19.

tive bargaining agreement must be exhausted before courts can deal with merits of dispute). General Motors, without citing any authority, adds that "the length of time involved in the negotiation, resolution or withdrawal of a grievance is part of the collective bargaining process," Item 48, pp. 2–3, and courts should not interfere with that process by terming a time period as "undue delay," thereby allowing a plaintiff to bypass intra-union procedures. *Id.* In rebuttal, plaintiff contends that *Clayton* clearly recognizes that undue delay is a factor in determining whether exhaustion may be excused in a particular case. *See* 451 U.S. at 689, 692 n. 19, 101 S.Ct. at 2095, 2096; Item 46, pp. 3–7. Plaintiff further contends that cases such as *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and *Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), recognize that a union's breach of its fair duty of representation, as alleged here, removes the presumption that contractual grievance procedures must be exhausted before an employee may resort to the courts. Item 46, p. 6. Plaintiff disputes defendants' assertion that the Reinstatement of Grievance Letters are incorporated into, and part and parcel of, the collective bargaining agreement. According to plaintiff, the agreement in effect at the time he filed his grievance (*i.e.,* the 1979 Agreement) did not contain such a letter, and thus the grievance procedures were inadequate. *See* Item 46, p. 1; Item 47, pp. 5–6.

With regard to Question 3, UAW refers the court to the Bryner affidavit (Item 45), which indicates that the union's internal grievance procedures afford a full range of remedies to make the grievant whole, encompassing "backpay, as well as related expenses, including appropriate attorney fees." Item 45, p. 6. General Motors adds that pursuant to the "Reinstatement of Grievances Agreement," the union may reinstate and pursue a grievance against the employer "to a satisfactory conclusion, which includes reinstatement of a deserving but wronged employee". Item 48, p. 5.[6] Plaintiff contends that even if the court should find these remedies adequate as a general matter, the special circumstances present in the instant case, *i.e.,* that plaintiff could not recover back pay against the now-defunct Local No. 1173 and may not be able to recover against the International Union for the misconduct of the Local, warrant excusing the plaintiff's failure to exhaust the internal union procedures. Item 46, pp. 8–9.

With regard to question 4, UAW submits that the plaintiff's claim accrues "when the employee had actual or constructive notice that the union has breached its duty of fair representation." *Demchick v. GM, UAW and its Local 846,* 821 F.2d 102, 105 (2d Cir.1987) (citing *King v. New York Telephone,* 785 F.2d 31, 34 (2d Cir.1986) (claims against both union and employer accrue when plaintiff knew or reasonably should have known that breach had occurred)). According to UAW, the statute will be tolled while "non-judicial" grievance resolution procedures are pursued; when those procedures are exhausted, the statute "picks up running where it left off." Item 41, p. 5. Also, *Demchick* holds that fraudulent concealment of a breach will toll the statute until plaintiff discovers the fraud. 821 F.2d at 105. General Motors submits that plaintiff's claim accrues when his grievance is wrongfully withdrawn, provided he knows, or reasonably should have known, that the grievance was withdrawn. Item 48, p. 12. Plaintiff submits that the responses by defendants as to accrual and tolling do nothing to allay the fear that exhaustion in a case such as this may result in a statute of limitations bar to judicial relief. Item 46, p. 9.

 The court recognizes that the policy requiring an employee to exhaust intra-un-

---

**6.** In its response to the court's questions, General Motors sets forth the entire range of "collective bargaining remedies" available to an employee under the National Agreement. Those remedies include a) Step 1: Presentation of Grievance to Foreman; b) Step 2: Appeal to Shop Committee; c) Step 3: Appeal to Corporate and International Level; d) Step 4: Appeal to Impartial Umpire; e) Powers of the Impartial Umpire; f) Intra–Union Remedies, and g) the Reinstatement of Grievance Agreement. Item 48, pp. 7–12, and Exh. A attached thereto.

ion grievance and appeals procedures prior to seeking judicial resolution of his or her claim is firmly grounded in the federal statutes regulating labor-management relations.

These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government.... The courts have jurisdiction to enforce collective bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute.

*United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* — U.S. —, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). It remains within the discretion of the court, however, to decide whether to implement that policy and require exhaustion in a particular case. *Clayton v. Automobile Workers,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981); *NLRB v. Marine Workers,* 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 1723 n. 8, 20 L.Ed.2d 706 (1968).

In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095. Further, the burden of establishing entitlement to the exhaustion defense lies with the union. *Johnson v. General Motors,* 641 F.2d 1075, 1079 (2d Cir.1981).

Upon review of the record before the court, including the pleadings, affidavits, interrogatories, depositions, and responses to the court's specific inquiries, it appears as though defendants have sufficiently discharged their burden with respect to the first *Clayton* factor, since there is no evidence of hostility in this case. A more difficult question is presented with regard to the second factor, *i.e.,* the adequacy of the union's internal appeals procedures. Defendants argue that those procedures are adequate since plaintiff's grievance may be reinstated and back pay and damages awarded against the union. Plaintiff contends, however, that the Reinstatement of Grievance Letter, by its terms, requires the employee to waive any claims for back pay or damages against the employer in return for reinstatement of the grievance. Thus, according to plaintiff, the union's procedures are inadequate since, by reinstating his grievance, plaintiff would be precluded from obtaining from his employer the very relief he seeks in his § 301 suit against both the employer and the union. Plaintiff further points out that since Local No. 1173 is no longer in existence, and since the International Union disclaims responsibility for the debts of a defunct local (*see* Item 41, p. 1, note 1), a serious question remains as to the availability of an adequate remedy from the UAW.

I find plaintiff's arguments persuasive within the context of the circumstances presented here, and find that UAW has not met its burden of demonstrating that no genuine issue exists as to whether its internal appeals procedures would be adequate to award plaintiff the full relief he seeks under LMRA § 301. The text of the Reinstatement of Grievances agreement between GM and UAW expressly rests that agreement on the condition:

that [GM] will not be liable for any claims for damages, including back pay claims, arising out of the grievance that ... relate to the period between the time of the original disposition and the time of the reinstatement as provided herein. It is further agreed that the reinstatement of any such grievance shall be conditioned upon the prior agreement of the Union and the employe [sic] or employes [sic] involved that none of them will thereafter pursue such claims for damages against [GM] in the grievance pro-

cedure, or in any court or before any Federal, state, or municipal agency.

Exhs. incorporated with Aff. of Robert Walker, attached to Item 19. Under this agreement, in order to have his grievance reinstated during the intra-union appeals process, plaintiff would clearly be required to forego not only his back pay and damages claims but also his LMRA § 301 claim against GM. In light of the additional fact that the nature and extent of relief available from the union is in considerable doubt due to the now-defunct status of Local No. 1173, a genuine issue remains in this case as to whether the union, upon reinstatement of the grievance, would be able to "grant the relief that would be available in the employee's § 301 suit against both defendants." *Clayton*, 451 U.S. at 695, 101 S.Ct. at 2098.

■ With regard to the third *Clayton* factor, *i.e.*, the question of unreasonable delay, defendants would have the court read *Clayton* as eliminating the necessity of considering that factor where intra-union procedures provide for reactivation of a grievance. *See* 451 U.S. at 692 n. 20, 101 S.Ct. at 2097 n. 20. Defendants cite the decision of this court in *McSpadden v. General Motors Corp.*, 679 F.Supp. 262 (W.D.N.Y.1987), which reconsidered and vacated its prior denial of UAW defendants' motion for summary judgment, and entered summary judgment for defendants, on the grounds that the plaintiff in that case had filed his action in district court before it accrued (*i.e.*, before he learned that his grievance had been withdrawn by the union) and because the intra-union remedy of reinstatement of the grievance would, in the context of that case, have been adequate. *Id.* at 263. From this, and based on other authority as well, *see, e.g., Shamblin v. General Motors Corp.*, 743 F.2d 436 (6th Cir.1986); *Monroe v. Int'l Union, UAW*, 723 F.2d 22 (6th Cir.1983); *Miller v. General Motors Corp.*, 675 F.2d 146 (7th Cir.1982), defendants argue that the internal union grievance procedures at issue here have consistently been found to be adequate, and that once that adequacy determination has been made, the *Clayton* inquiry should end. Item 34, p. 5. The

court declines to interpret the holding in *Clayton* to require such a result. The reason that the *Clayton* Court did not reach the "unreasonable delay" prong of the inquiry as to the propriety of excusing exhaustion in the case before it was, simply, that it had already found the union's internal procedures to be inadequate. *See* 451 U.S. at 691–92 and n. 19, 101 S.Ct. at 2096 and n. 19. Discussion of unreasonable delay, in the context of the facts before it, was thus deemed unnecessary by the Court, and not universally precluded where the union's procedures provide for reinstatement of grievances. *Id.*

This court's ruling in *McSpadden* is not to the contrary. *McSpadden* was decided on the basis that the complaint was prematurely filed, and that the plaintiff had been adequately informed that his cause of action had not yet accrued. Further, this court found that the union's appeals procedure, which "could take a number of months to be completed, ... cannot be said to constitute an 'unreasonable delay' under *Clayton*", 679 F.Supp. at 263, and refused to penalize the defendants for the length of time the action had been pending before the court. *Id.* In the instant case, plaintiff does not include the prospective length of the appeals procedure in his computation of "unreasonable delay;" the period of delay complained of encompasses that period from the time plaintiff filed his grievance with the company (December, 1979) to the time plaintiff was notified that his grievance had been withdrawn. Exactly when that notification took place is a question of fact which, under the circumstances here, might alone preclude the granting of defendant's summary judgment motion. Combined with the fact that, even under defendants' computation, the pre-appeal processing of plaintiff's grievance took four years, and when considered in light of statistics presented by plaintiff showing that the average time for exhaustion of the intra-union appeals procedures was over 22 months (*see* Exh. B, attached to Item 23), the question of notification becomes one which prevents the court from finding as a matter of law that exhaustion of internal

union grievance procedures would not unreasonably delay plaintiff's opportunity to obtain a judicial hearing on the merits of his claim. *Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095.

█ From the foregoing analysis of the facts and circumstances presented in light of the relevant factors as outlined in *Clayton,* the court does not see fit to require exhaustion in this case where genuine issues remain as to whether the remedies provided by the intra-union appeals procedures were adequate and whether exhaustion of those procedures would unreasonably delay plaintiff's opportunity for judicial hearing on the merits of his claim. Due to the existence of such issues, therefore, defendants' motion to dismiss and/or for summary judgment is denied.

█ With regard to defendants' motion to strike plaintiff's request for a jury, the fact that plaintiff has requested both legal and equitable relief in the same action does not prejudice the plaintiff's right to a jury trial on the legal issues. *Massey v. Whittaker Corp., Winters Industry Div.,* 661 F.Supp. 1151, 1154 (N.D.Ohio 1987); *see also Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962). Defendants' motion is thus denied.

The parties will meet with the court on November 22, 1988, at 9 a.m. to discuss the future of this litigation.

So ordered.