Clawzelle **WIGGINS**, Plaintiff,

v.

**CHRYSLER CORPORATION**, et al., Defendants.

No. C88–7349.

United States District Court, N.D. Ohio, W.D.

June 22, 1989.

R. Kevin Greenfield, Sylvania, Ohio, for plaintiff.

Patrick J. Johnson, Eastman & Smith, Toledo, Ohio, for Chrysler Corp. and Acustar, Inc.

Joan Torzewski, Lackey, Nusbaum, Harris, Reny & Torzewski, LPA, Toledo, Ohio, for United Auto., Aerospace, Agricultural Implement Workers of America (UAW), Chrysler Intern., and Chrysler Local 1435.

## OPINION AND ORDER

McQUADE, District Judge.

This case is before the court on the defendants' motions for summary judgment. The issue in this case is whether this court should exercise its discretion and excuse the plaintiff's failure to exhaust intraunion remedies.

The plaintiff, Clawzelle Wiggins, was employed by defendant Chrysler Corporation through its subsidiary, Acustar, Inc., [hereinafter both corporations will be referred to as "Chrysler"], at its plant in Perrysburg, Ohio, from October 9, 1967 until August 29, 1986. Plaintiff was employed as a maintenance worker and was a member of defendants UAW International and Local 1435 [hereinafter "Union"]. The terms and conditions of plaintiff's employment were governed by a collective bargaining agreement entered into by Chrysler and the Union.

The collective bargaining agreement sets forth a "Chronic Absentee Procedure." The Procedure applies "to employees who avoid corrective, progressive discipline for absences by attributing them to frequent and recurring illnesses." Plaintiff's Memorandum in Opposition to All Defendants' Motions for Summary Judgment, Exhibit 1. Employees with the worst attendance records (rates of absenteeism above 20%) are identified by the Union Attendance Counselor and the Labor Relations Supervisor. Such employees are counseled that their attendance records are unsatisfactory. If the employee's attendance record does not improve after the counseling session, the employee is notified in writing that his attendance record has not improved. The employee's record is then reviewed by the Labor Relations Supervisor

and the Union Attendance Counselor. The Labor Relations Supervisor will either counsel the employee again or discipline the employee. In extreme cases, the employee may be terminated.

If the employee is disciplined or terminated, the Union may submit a grievance at the third step of the Grievance Procedure within five working days. This grievance may be appealed to the Appeal Board. In the case of termination, if the grievance is appealed to the Appeal Board, the National Attendance Council may first review the merits of the case and, within 15 working days of the date of its review, may rescind, modify or agree with the termination. The decision of the Council is final and binding and is not subject to further appeal under the collective bargaining agreement. If the National Attendance Council cannot reach a decision, the case is referred back to the Appeal Board for disposition. If the Appeal Board is unable to settle the case, it may be appealed to the Impartial Chairman.

On August 20, 1985, the plaintiff was counseled by the Labor Relations Supervisor and his Union Representative, Bernie Sailor, that his absentee rate for the period December 31, 1984 through June 30, 1985 was 23.9%.[1] The plaintiff was informed that if his attendance record did not improve significantly, he would be counseled again, disciplined or terminated. The plaintiff objected to Chrysler's initiation of the Chronic Absentee Procedure because he alleged that many of the days on which he was absent from work were not includable in his absentee rate because they were days he spent in the hospital. Plaintiff appealed to the National Attendance Council which found that Chrysler had correctly determined the plaintiff's absentee rate and appropriately invoked the Chronic Absentee Procedure.

The plaintiff's attendance record was evaluated for the six-month period ending May 30, 1986. Chrysler determined that his rate of absenteeism for that period was 46.7%. The plaintiff was discharged on August 29, 1986.

The Union filed a grievance on behalf of the plaintiff on September 2, 1986. Chrysler denied the grievance, and the Union appealed to the National Attendance Council. On April 1, 1988, the National Attendance Council decided that the plaintiff should be offered reinstatement. Upon his return to work, his discharge would be changed to a disciplinary layoff, without backpay for the period during which he was away from the plant. The plaintiff refused reinstatement on those terms. He did not pursue internal Union appeal procedures to challenge the Union's handling of his grievance.

The plaintiff filed this case in May, 1988, alleging several causes of action. An amended complaint was filed on June 8, 1989, alleging two causes of action: (1) in Count I, the plaintiff alleges that Chrysler breached the collective bargaining agreement and the Union breached its duty of fair representation in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; and (2) in Count II, the plaintiff alleges that Chrysler discriminated against him on account of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Summary judgment is appropriate when the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). In deciding a motion for summary judgment, this court will view the evidence in the light most favorable to the non-moving

---

1. Although the Chronic Absentee Procedure calls for counseling by the Labor Relations Supervisor and the Union Attendance Counselor, a Union Attendance Counsel had not been appointed at the time plaintiff was counseled. The Union was represented at plaintiff's counseling session by Bernie Sailor, plaintiff's Union Representative.

party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The non-moving party, however, may not rest upon the allegations or denials of the pleadings. Rule 56(e) requires that the non-moving party "set forth specific facts showing there is a genuine issue for trial." Fed.R. Civ.P. 56(e). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ An employee seeking a remedy for his employer's breach of the collective bargaining agreement and his union's breach of its duty of fair representation must exhaust the grievance and arbitration procedures established by the collective bargaining agreement before maintaining a § 301 suit. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). The employee must also exhaust internal union grievance and appeals procedures before maintaining a § 301 suit unless: (1) union officials are so hostile that the employee could not possibly obtain a fair hearing; or (2) the intraunion procedure would be inadequate either to award the full relief the employee seeks under § 301 or to reactivate the employee's grievance; or (3) exhaustion of intraunion procedure would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. *Clayton v. International Union*, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981). The burden is on the employee to show that his failure to exhaust intraunion remedies should be excused because of one of the factors enumerated above. *Monroe v. International Union*, 723 F.2d 22, 25 (6th Cir.1983) (*per curiam*). *Contra Johnson v. General Motors Corp.*, 641 F.2d 1075, 1079 (2d Cir.1981). Whether to excuse the exhaustion requirement is a matter of this court's discretion. *Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095.

The plaintiff does not dispute that the Constitution of the International Union requires that Union members aggrieved by any Union action must first exhaust intraunion remedies before initiating a court action to redress his grievance. *See* Motion of Defendants UAW International and UAW Local 1435 for Summary Judgment, Exhibit 8. The plaintiff submits three reasons why this court should exercise its discretion to excuse his failure to exhaust intraunion remedies.[2]

■ First, the plaintiff argues that there is a genuine issue of material fact as to whether he can be afforded the complete relief he seeks in his § 301 suit against Chrysler and the Union. The plaintiff is seeking money damages, reinstatement, expungement from his employment record of all evidence of any discharge or proceeding related thereto, reinstatement of all his seniority rights under the collective bargaining agreement, expungement of all his recorded absences, and attorneys' fees and costs. The thrust of plaintiff's argument is that *Clayton* requires that his failure to exhaust intraunion remedies be excused because there is an issue of fact as to whether each item of relief that he seeks in his § 301 suit is available to him through intraunion remedies. The plaintiff's analysis of *Clayton* is flawed. The Court stated that an employee should not be required to exhaust intraunion remedies where "the internal union appeals procedures would be inadequate *either* to reactivate the employee's grievance *or* to award him the full relief he seeks under § 301." *Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095 (emphases added). The plaintiff in *Clayton* was not required to exhaust intraunion remedies because even if he had invoked intraunion remedies, the union would not have been able to pursue his grievance because it had failed to notify the employer within 15 days of the employer's decision that the union intended to seek arbitration of Clayton's grievance. The Court noted:

> The UAW informs us that "[s]ome employers and unions have, through collective bargaining, agreed to allow the reinstatement of withdrawn grievances

---

2. The plaintiff has not alleged that Union officials are so hostile to him that it would be impossible to obtain a fair hearing.

where a union tribunal reverses the union's initial decision. This is true, for example, in the current UAW contracts with the major automobile and agricultural implement manufacturers." Brief for Respondents in No. 80–5049, p. 18, n. 40. *In such cases, the relief available through the union's internal appeal procedures would presumably be adequate.* *Clayton,* 451 U.S. at 691 n. 18, 101 S.Ct. at 2096 n. 18. Chrysler and the Union have entered into such an agreement in this case whereby an employee who is successful in internal Union appeals may have his grievance reinstated into the grievance procedure at the level at which the original disposition of the grievance occurred. Motion of Defendants UAW International and UAW Local 1435 for Summary Judgment, Exhibit 11. In *Monroe v. International Union,* the Sixth Circuit held that the plaintiff had failed to show the inadequacy of intraunion remedies where the employer agreed to reinstate a grievance if the employee were successful in the intraunion appeals process. 723 F.2d at 25. *Accord Wozniak v. International Union,* 842 F.2d 633, 635 (2d Cir.1988). *Cf. Hill v. General Motors Corp.,* 697 F.Supp. 1274, 1278–79 (W.D.N.Y.1988) (intraunion remedy held to be inadequate despite employer's agreement to reinstate grievance because plaintiff was required to waive claims for backpay or damages against employer in return for reinstatement of the grievance and because local union no longer existed and international union disclaimed responsibility for the debts of a defunct local).

█ The plaintiff's second argument is that because it took over 18 months for the National Attendance Council to process his appeal, to exhaust intraunion remedies would unreasonably delay his opportunity to obtain a judicial hearing on the merits of his claim. The court does not agree. The fact that the plaintiff spent at least 18 months pursuing contractual remedies under the collective bargaining agreement is irrelevant to whether his pursuit of intraunion remedies would unreasonably delay his day in court. *See Curry v. Ford Motor Co.,* 646 F.Supp. 261, 264 (W.D.Ky.1983).

The key word in analyzing the third *Clayton* factor is "unreasonably." The plaintiff has taken no action whatsoever in pursuit of his intraunion remedies and has presented no evidence that such a pursuit would result in an unreasonable delay in filing a § 301 suit. *Compare Ruzicka v. General Motors Corp.,* 523 F.2d 306, 311 (6th Cir. 1975) (court held that pursuing intraunion remedies for 27 months was sufficient exhaustion of those remedies to permit a § 301 suit), *cert. denied,* 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983), *with Willetts v. Ford Motor Co.,* 583 F.2d 852, 855–56 (6th Cir.1978) (failure to pursue intraunion remedies at all bars plaintiff's § 301 suit).

█ The plaintiff's third argument in favor of excusing him for failure to pursue intraunion remedies is that the Union failed to inform him as to the status of his grievance and the available intraunion remedies. The plaintiff's argument is premised on a mistaken notion of the Union's duty. The Union is not required to inform its members of intraunion remedies. *Monroe v. International Union,* 723 F.2d at 26. The plaintiff does not dispute that he received a copy of the UAW Constitution and *Solidarity,* the Union's weekly newsletter. The plaintiff contends that despite his receipt of these documents outlining his intraunion remedies, his ninth-grade education prevented his understanding them fully. The plaintiff's contention is not persuasive. Even if the court were to agree reluctantly that a ninth-grade education is insufficient to read and comprehend the Union Constitution and newsletter, the plaintiff has had the benefit of an attorney since at least May, 1988, when he filed this suit. If no one else was able to apprise him of his intraunion remedies and duty to exhaust them before filing a § 301 suit, his attorney should have been able to do so. *See Wozniak,* 842 F.2d at 636 ("[The employee] was represented by an attorney who had the necessary training to read and understand the union constitution.").

Because the plaintiff has failed to make the requisite showing to excuse his failure to exhaust intraunion remedies, Chrysler's

and the Union's motions for summary judgment as to Count 1 of the amended complaint are sustained.

In order to prove that he has been the victim of race discrimination in violation of Title VII, the plaintiff must set forth a *prima facie* case by showing that he was treated differently than similarly situated white employees. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). The plaintiff has filed to make the requisite showing for a *prima facie* case.

The plaintiff's evidence shows that 21 employees had a rate of absenteeism higher than his own from December 31, 1985 through June 30, 1986. The plaintiff alleges that two of these employees, Caryl Blasingham and Joe DiLucia, were treated differently than he. First, the plaintiff has produced no evidence as to the race of these two employees. Second, assuming *arguendo* that these two employees are white, it does not appear from their attendance records that they were treated differently than the plaintiff. Ms. Blasingham was placed in the Chronic Absentee Procedure program and was counseled in April, 1985. Following this counseling session, her attendance improved and she was released from the program. Her rate of absenteeism rose above the 20% threshold, however, in 1986, and she was placed in the program again. Contrary to the plaintiff's assertions, Ms. Blasingham did not receive two counseling sessions following a continuous period of high absenteeism. Therefore, she was not treated differently than the plaintiff. Mr. DiLucia was placed in the program and counseled in November, 1986. By February, 1987, his rate of absenteeism fell below the 20% threshold. Thus, Mr. DiLucia was not treated differently than the plaintiff. Because the plaintiff has failed to show that he was treated differently than similarly situated white employees, he has failed to state a *prima facie* case, and Chrysler is entitled to summary judgment as to his Title VII claim.

It is therefore

ORDERED that the defendants' motions for summary judgment are sustained;

FURTHER ORDERED that this case is dismissed at plaintiff's costs.