George A. WILLIAMS, Plaintiff,

v.

UNITED AUTO WORKERS LOCAL 501, AFL–CIO; Robert Schuman, President of United Auto Workers Local 501; Joseph Jastrzemski, Individually and as Chairman of United Auto Workers Local 501; Bell Aerospace Textron Division of Textron, Inc.; and The International Union United Automobile Aerospace & Agricultural Implement Workers of America, Defendants.

No. 93–CV–348C.

United States District Court, W.D. New York.

Dec. 28, 1993.

**500**

Hovey & Massaro (Angelo Massaro, of counsel), Niagara Falls, NY, for plaintiff.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria (Richard Lipsitz, of counsel), Buffalo, NY, for defendant Union and Joseph Jastrzemski.

Jackson, Lewis, Schnitzler & Krupman (Penny Ann Lieberman, of counsel), New York City, for defendant Bell Aerospace.

CURTIN, District Judge.

This is a "hybrid" action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, stemming from plaintiff George A. Williams' layoff in October 1992 by his employer, defendant Bell Aerospace Wheatfield ("Bell").[1] Williams alleges:

(1) two breaches by Bell of the collective bargaining agreement between Bell and Williams' local union, United Auto Workers Local 501 ("Local 501"). Item 1, Ex. 1, Complaint, ¶¶ 14, 21;

(2) a breach of the duty of fair representation by Local 501; by defendant Robert Schuman, a former President of Local 501; by defendant Joseph Jastrzemski, Chairman of Local 501; and by defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). *Id.* ¶¶ 25–26; and

(3) a claim that Bell and the union defendants conspired to deprive him of his rights as an employee and union member. *Id.* ¶¶ 31–33.

The Union (UAW, Local 501, and Joseph Jastrzemski) has moved for dismissal of the complaint and for summary judgment, pursuant to Fed.R.Civ.P. 12(b)(6) and 56, on the grounds that Williams has failed to exhaust his internal union remedies, that portions of his claims are barred by the applicable statute of limitations, and that he has no separable cause of action for conspiracy. Item 10. Defendant Robert Schuman has failed to appear in the action.[2] Bell has filed notice that it agrees with and does not oppose the Union's motion for summary judgment, and that it requests dismissal of the complaint for the reasons set forth by the Union in its motion papers. Item 19.

Williams opposes the Union's motion, largely by arguing that there are factual issues in dispute sufficient to preclude summary judgment. Item 26, p. 1.

### BACKGROUND

Williams began working at Bell in October 1967. Twenty-five years later, on October 8, 1992, he was notified that he was being "surplused" from his position, effective October 13, 1992.

At the time he was laid off, Williams was working as an Electrician Specialist, job classification 49–2. On a number of occasions during the four-year period preceding his layoff, he had filed grievances complaining that unauthorized persons of other job classifications were performing classification 49–2 work. Item 22, ¶ 23 and Ex. J. He claims that as a result of the filing of these grievances, and of his insistence that they be properly processed, Local 501 and Bell were hostile towards him. Item 22, ¶ 22. Allegedly, he had had heated exchanges with the Chairman of Local 501, defendant Joseph

---

1. Bell is sued incorrectly here as "Bell Aerospace Textron Division of Textron, Inc." *See* Item 3, p. 1.

2. According to the Union, Schuman was never served with a summons. Item 11, p. 2. According to Williams, however, Schuman was served with a Summons and Complaint on April 9, 1993. Item 25, p. 5 and Ex. A.

Jastrzemski, and with a Union steward, Christopher Marshcke, concerning the "illegal assignments of work by the Company and failure of the Local Union to protect [his] interests and others in like position." *Id.* ¶ 24; *see also,* Items 23, 24.

On receiving notice of his layoff, Williams filed a grievance, claiming that he was being "illegally surplused" from his classification and that persons in other job classifications were "illegally" doing classification 49–2 work. Item 22, ¶¶ 4–5 and Ex. A. The grievance was denied on October 27, 1992; and as a result defendant Joseph Jastrzemski, Chairman of Local 501, requested arbitration. *Id.* ¶ 6 and Ex. A.

It is not clear whether or not further steps were taken towards obtaining arbitration. However, Williams evidently soon became concerned that Local 501 was failing to properly protect his interests. On December 11, 1992, he wrote to Local 501 through his attorney, Angelo Massaro, requesting that the union "process the grievance in accordance with the provisions of the [Collective Bargaining] Agreement." Item 22, ¶¶ 7–8 and Ex. B. A copy of this letter was sent to the local UAW (International) representative. *Id.* ¶ 9 and Ex. C. Williams also notified Bell of his concerns in a letter dated December 10, 1992. *Id.* ¶ 10 and Ex. D.

On December 15, 1992, Local 501 and Bell executed an agreement, evidently without Williams' knowledge, to merge job classification 49–2, Electrician Specialist, with classification 230–1A, Precision Instrument Maker, A.A. Item 22, ¶ 11 and Ex. E. The stated purpose of the merger agreement was "[t]o resolve certain seniority versus classification/work assignment issues." *Id.* Under the terms of the agreement, all 230–1A employees "in-house" had their job seniority maintained at their then current levels. The two affected 49–2 employees—Williams and one other—"would be assigned a job seniori-

ty date which would make them the next 230–1A's recalled, should a recall occur." *Id.*

Williams claims that the merger agreement, which was entered into pursuant to Article XXV of the collective bargaining agreement, *see* Item 13, ¶¶ 2–3, violated the Grievance Procedure (Article V) and the Arbitration Procedure (Article VI) of the collective bargaining agreement,[3] that it failed to protect his job seniority and unit seniority while benefiting and protecting union officials and their families, and that it was executed out of hostility and in bad faith. Item 22, ¶¶ 25–43.

In a letter dated December 24, 1992, nine days after execution of the merger agreement, Williams' attorney was advised by Local 501 President, defendant Robert Schuman, that Williams' employment status "is being resolved by United Auto Workers Local 501 through the grievance procedure." Item 22, ¶ 13 and Ex. F. No mention was made of the merger agreement.

On December 29, 1992, Williams' attorney sent a letter to Schuman at Local 501 requesting, *inter alia,* that he be advised of "the date when the grievance will be processed." Item 22, ¶ 15 and Ex. G. A copy of this letter was sent to the local UAW (International) representative. *Id.* ¶ 16 and Ex. H. It seems that neither Local 501 nor the UAW representative responded to the letter. *Id.* ¶ 17.

The merger agreement was ratified by unanimous vote at a special ratification meeting of the Local 501 membership on January 10, 1993. Item 17, ¶ 8 and Ex. D.[4] The minutes of the meeting make it plain that the purpose of the agreement was "to settle grievances filed by George Williams, as well as grievances filed by Barb Wood." *Id.* It is not clear what steps Local 501 officials took to inform the membership in general, or

---

3. *See* Item 22, ¶¶ 27–30 and Ex. K.

4. Following ratification, Williams' grievance form was endorsed as follows:

3½ Step Disposition:
   Upon ratification of Agreement (dated 12–13–93) on 1–10–93 by the Local 501, the issue is resolved. The 49–2 classification is merged

with the 230–1A classification as delineated in the Agreement.

Item 22, Ex. A. Williams asserts that there is nothing in either the grievance procedure or the arbitration procedure of the collective bargaining agreement that provides for the settlement of a grievance through a negotiated "Step 3½". Item 22, ¶¶ 28–31.

Williams in particular, that the January 10, 1993, meeting was to be held, or what its purpose was. However, Williams was evidently unaware that the meeting was to take place, or at least that its purpose was to ratify an agreement that was intended to settle his grievance. Item 22, ¶¶ 17–19.

In a letter dated January 14, 1993, Williams was informed by Local 501 Chairman Jastrzemski that his grievance had been settled as a result of the merger of the 49–2 and 230–1A job classifications. Item 22, ¶ 18 .and Ex. I. Dissatisfied with this result, Williams commenced the present action by filing a complaint, on or about April 8, 1993, in the Supreme Court of the State of New York, County of Niagara. Item 1, Ex. 1. The action was later removed to this court, on petition of the defendants. Items 1, 3.

The defendants have moved for summary judgment. They do not challenge, in this motion, Williams' claims of breach of contract and breach of fair representation. Rather, they argue that Williams has failed to exhaust his internal union remedies. They maintain that under the UAW Constitution there are elaborate complaint and appeal procedures by which the actions of a local union and its officers may be challenged; that members are required to fully exhaust these appeal procedures before commencing an action in a court or administrative agency; that Williams never invoked any of the appeal procedures open to him; and that since Williams failed to pursue a remedy through the UAW, this action should be dismissed. *See* Item 11, pp. 3–5.

The first step in the union appeal process is for a member to challenge local union actions at a membership meeting. Item 11, p. 3. If the membership rejects the challenge, or does not act, the member has the right to appeal to the International Executive Board of the UAW ("IEB"). *Id.* at 3–4. Appeal to the IEB generally results in a hearing, at which the member has a right to representation by counsel, to submit evidence, and submit a brief. *Id.* at 4. If the member is dissatisfied with the result at the IEB, he or she may appeal either to the Convention Appeals Committee ("CAC"), a body composed of elected delegates from each UAW region, or to the Public Review Board ("PRB"), which consists of a panel of distinguished individuals independent of the union. *Id. See also,* Items 15 and 16. Both the CAC and the PRB have authority to award money damages. *Id.*

Williams does not claim to have attempted to exhaust his union remedies. Rather, he opposes summary judgment by maintaining that questions of material fact exist as to:

(1) whether or not he could have obtained an adequate remedy through an appeal to the UAW, and

(2) whether or not the Union adequately informed him of his UAW appeal rights and remedies.

## DISCUSSION

### A. Williams' Failure to Exhaust Internal Union Remedies

■ As the defendants note, national labor policy favors exhaustion of intra-union appeal remedies as a means of encouraging private rather than judicial resolution of labor disputes. However, it remains within the discretion of the court to decide whether to implement that policy and require exhaustion in a particular case. *Clayton v. International Union, UAW,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981). In exercising this discretion, at least three factors are relevant:

first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If *any* of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Id.* (emphasis added). The burden of establishing entitlement to the exhaustion defense lies with the union. *Hill v. General Motors Corp.,* 697 F.Supp. 1274, 1278 (W.D.N.Y.

1988) (citing *Johnson v. General Motors*, 641 F.2d 1075, 1079 (2d Cir.1981)).

### (i) Union hostility towards Williams

■ In relation to the first *Clayton* factor, the defendants argue that despite Williams' allegations of hostility on the part of Local 501 officials:

> to establish the degree of hostility that would excuse a member from his ordinary duty to exhaust the internal union remedies, " 'the member must establish futility at every step of the relevant grievance procedure.' " [Citations omitted]. Plaintiff has not alleged, and it is inconceivable that plaintiff could demonstrate, there would be improper handling of his grievance by the IEB, the CAC or the PRB. Those boards have no direct relationship to the plaintiff whatsoever, and the PRB, in fact, is composed of individuals outside of and completely independent from the UAW.

Item 11, pp. 8–9. In response, Williams does not seriously challenge the defendants' argument. He simply reiterates his allegations of hostility at the local union level, Item 26, pp. 5–7, and asserts that "the Union has not discharged its burden to establish that there are no questions of fact regarding the Union's hostility toward Plaintiff." *Id.* at 7.

The defendants have offered evidence that the UAW Constitution provides for an appeals process that is removed from whatever hostility there may be towards Williams within the Local 501 leadership. Williams has failed to counter this with any evidence that hostility exists towards him within the IEB, the CAC or the PRB. The court concludes that the defendants have met their burden under the first prong of the *Clayton* test.

### (ii) Adequacy of union remedies

■ With respect to the second *Clayton* factor, the Union defendants argue that "[w]hether the appeals process in the present case would result in full relief, reinstatement of plaintiff's grievance, or another result satisfactory to the plaintiff, can only be answered when the plaintiff avails himself of the appeals procedure." Item 11, p. 9. They

point out that some courts have found that "exhaustion can, and often should, be required even if the internal review procedure could not afford the claimant the full relief sought in the lawsuit." *Id.* at 10 (quoting *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, 782 F.2d 674, 683 (7th Cir.1986)). They then assert that:

> Although there is no agreement between the UAW and Bell for the reinstatement of grievances, if the IEB, CAC or PRB find a grievance was improperly dismissed, it cannot be said that resort to the appeals procedure would not result in reinstatement of the grievance. After review of the settlement of plaintiff's grievance by the merger of the job classifications, the parties may determine the plaintiff's situation should be reconsidered. In addition, the plaintiff may decide, after a review of the facts on appeal, that the Union's actions were not improper and to forgo litigation. Also, the International Union has the authority to award the plaintiff money damages, including prospective damages. Therefore, although the Union cannot direct plaintiff's reinstatement to his position, his damages can be fully compensated.

Item 11, p. 11.

Williams counters that in conceding that there is no agreement between the UAW and Bell for the reinstatement of grievances, the defendants admit the possibility that the internal remedies might be inadequate, raising an issue of fact as to the adequacy of the available remedies. Item 26, p. 8. He continues:

> Further, the possibility of reinstatement of the grievance does not equate to reinstatement of Plaintiff to his position.
>
> Admittedly, there is some indication in the Defendants' Affidavits and in the pleading papers that the PRB could give money damages. Notwithstanding this, there is no indication anywhere that if Plaintiff resorted to the internal appeals procedure, reinstatement with restoration of the seniority, pension, vacation, hospitalization and other benefits he was arbitrari-

ly and capriciously deprived of by the December 15th Agreement could be part of the remedies.

*Id.* at 8–9. Thus, he argues, genuine issues of fact remain as to whether the remedies that might be provided by an internal union appeal would be adequate. *Id.* at 9.

In *Clayton,* the Supreme Court made it clear that "where an aggrieved employee cannot obtain either the substantive relief he seeks or reactivation of his grievance, national labor policy would not be served by requiring exhaustion of internal remedies. In such cases, exhaustion would be a useless gesture: it would delay judicial consideration of the employee's § 301 action, but would not eliminate it." *Clayton v. International Union, UAW,* 451 U.S. at 693, 101 S.Ct. at 2097. Where reinstatement of the aggrieved employee to his position is the substantive relief sought, reinstatement need not be one of the available outcomes of an appeal. However, if it is not, then reactivation of the employee's grievance should be.

Here, the relief sought by Williams is reinstatement to his position. The defendants concede that this could not be directed by the Union. Item 11, p. 11. The question becomes, therefore, whether the UAW could direct reactivation of Williams' grievance following a successful appeal.

The defendants have conceded that there is no agreement between the UAW and Bell for the reactivation of grievances. Item 11, p. 11. However, Williams' grievance was not settled through the usual grievance mechanism, but by the December 15, 1992, job merger agreement between Local 501 and Bell, and the subsequent ratification of that agreement by the Local 501 membership. What is not clear is whether, if Williams had pursued an appeal with the UAW, any of the UAW appellate bodies could have voided the merger agreement or its ratification, and if so, whether that would have had the effect of reinstating Williams' grievance.

The defendants have failed to meet their burden under the second part of the *Clayton* test. It is simply not clear that if Williams had resorted to an appeal to the UAW, the Union could have ensured that—if his appeal were found to have merit—he could have been provided either with the substantive relief he was seeking (reinstatement to his position) or reactivation of his grievance. While monetary damages might have been available, the issue of whether or not such damages could have been adequate is a matter of dispute.

### (iii) Unreasonable delay

The defendants assert that the UAW appeals procedures would not unreasonably delay Williams' opportunity to obtain a judicial hearing, citing this court's finding in *McSpadden v. General Motors Corp.,* 679 F.Supp. 262, 263 (W.D.N.Y.1987), that the procedures would not constitute "unreasonable delay." Item 11, p. 12.

Williams refers to *Hill v. General Motors Corp.,* 697 F.Supp. at 1279, in which the plaintiff had presented statistics showing that the average time for exhaustion of UAW intra-union appeals procedures was 22 months. Item 26, p. 9. He argues that a delay of 22 months could be considered unreasonable. *Id.* at 10.

There is nothing in the record to suggest that, had Williams appealed to the UAW in this case, the Union would have unreasonably delayed taking action. Williams has made no serious claim that unreasonable delay would have occurred. The court therefore finds that the defendants' burden under the third prong of the *Clayton* test has been met.

### (iv) Williams' lack of knowledge of internal Union remedies

■ The defendants maintain that "[s]hould plaintiff assert he failed to exhaust his internal union remedies because he was unaware of them or did not understand them, this does not excuse his failure." Item 11, p. 12. They cite case law to the effect that union members are obligated to acquaint themselves with the remedies available under the UAW Constitution. *Id.* at 12–13. Further, they assert that UAW members are regularly apprised of their internal union remedies by way of union newspaper articles. *Id.* at 12.

Williams, on the other hand, observes that courts have noted that "where the internal union remedy is uncertain and has not been specifically brought to the attention of the disciplined party, ... and the injury to a union member immediate and difficult to compensate by means of a subsequent money award, exhaustion of union remedies ought not to be required." Item 26, p. 10 (quoting *Johnson v. General Motors,* 641 F.2d at 1079). He then argues at length that the defendants systematically ignored his requests for information and guidance regarding the disposition of his grievance, and that following the ratification of the December 15, 1992, agreement which purportedly settled the grievance, they failed to provide him with any guidance concerning the availability of an appeal. Item 26, pp. 10–14.

Williams' argument adds weight to his assertion that exhaustion should not be required in this case. If his grievance had been settled in the normal way, pursuant to the grievance procedure (Article V) or the arbitration procedure (Article VI) of the collective bargaining agreement, then it would be reasonable to hold that he should have been aware of the internal union appeal procedures available to him. In this case, however, his grievance was settled not in the way anticipated by Articles V and VI, but by an agreement pursuant to Article XXV, which provides a mechanism for job mergers—an agreement that was ratified by the Local 501 membership. It is not at all clear that Williams should have known what, if any, internal appeals procedures he could invoke under such circumstances, and the defendants evidently did nothing to provide him with appropriate guidance.

### (v) Conclusion

In view of (i) the defendants' failure to meet their burden under the second part of the *Clayton* test, (ii) Williams' understandable confusion over both the way in which his grievance was handled and the availability of an appeal, and (iii) the defendants' failure to provide Williams with appropriate guidance concerning these matters, the court will exercise its discretion and not require exhaustion of intra-union appeal remedies in this case.

### B. Williams' Cause of Action Against the UAW

The defendants maintain that the UAW (International Union) did not participate in or approve of the merger agreement by which Williams' grievance was settled, or the ratification of that agreement. Item 11, pp. 13–14. Further, they maintain that since Williams did not invoke the appeal procedures under the UAW Constitution, the UAW had no opportunity to review the settlement of his grievance. *Id.* at 14. Accordingly, they argue, the UAW had no involvement whatsoever in the facts and circumstances giving rise to Williams' claims, and so the claims against the UAW should be dismissed. *Id.*

Williams has done little to respond to the defendants' arguments on this issue. He merely maintains that the local UAW (International) representative was aware of the December 15, 1992, merger agreement and its ratification, and that he failed to proffer advice to Williams as to his rights. Item 26, p. 13.

Williams' claims against the International Union are based on allegations that the Union failed to afford him fair representation by failing to enforce his rights under the collective bargaining agreement, by failing to process and arbitrate his grievance in the proper manner, and by failing to respond to his requests for assistance. Item 1, Ex. 1, ¶¶ 26, 29. What is not clear at this time is the extent to which the International Union—as distinct from Local 501—owed a duty of fair representation to Williams. Therefore, the court will withhold ruling on this issue for the present.

### C. Additional Issues

The defendants have raised a statute of limitations question in relation to certain allegations made in paragraphs 20 and 21 of the complaint, Item 1, Ex. 1. Item 11, pp. 14–15. Further, they maintain that there is no legal basis for Williams' fourth (conspiracy) cause of action. *Id.* at 15–17. At the present state of the record, it would be premature to consider these issues. The court will withhold ruling at this time.

## CONCLUSION

For the reasons stated, the defendants' motion for dismissal of the complaint as a whole and for summary judgment is denied.

The court assumes that discovery is necessary. The parties shall confer about the scope and length of the discovery process. A telephone conference shall be held on January 7, 1994, at 8:45 a.m. to frame an order.

So ordered.