Cesar MENDES and William Evenger,
Plaintiffs,

v.

BROTHERHOOD OF RAILWAY AND
STEAMSHIP CLERKS, FREIGHT
HANDLERS, EXPRESS AND STA-
TION EMPLOYEES, AFL–CIO–CLC,
RAILWAY EXPRESS AGENCY, INC.,
et al., Defendants.

No. 71 Civ. 5094.

United States District Court,
S. D. New York.

June 26, 1972.

Godfrey P. Schmidt, New York City, for plaintiffs, Cesar Mendes and William Evenger.

Arthur M. Wisehart, New York City, for Railway Express Agency, Inc.

Reilly, Fleming & Reilly, New York City, for defendants Brotherhood of

Railway, Airline & Steamship Clerks, Freight Handlers, Express & Station Employees, AFL–CIO–CLC, R. J. Devlin, Steve Milone and William Bannon.

## OPINION

GAGLIARDI, District Judge.

Plaintiffs, Mendes and Evenger, have sued their employer Railway Express Agency, Inc. (REA), their statutory bargaining representative the Brotherhood of Railway and Steamship Clerks, etc. (BRAC), and their union officials seeking injunctive relief mandating their promotions and monetary damages. The complaint alleges that REA violated certain rules of the collective bargaining agreement between REA and BRAC and that BRAC discriminatorily failed to prosecute plaintiffs' claims in violation of its statutory duty. Defendants BRAC and the union officials moved pursuant to Rule 12(b) to dismiss the complaint against them for failure to state a cause of action or, alternatively, for summary judgment under Rule 56 Fed. R.Civ.P.

In support of the motion, defendants have submitted affidavits of union officials having personal knowledge of the facts together with numerous exhibits, while plaintiffs rely upon the pleadings and their attorney's affirmation. The complaint does state a cause of action against the union for unfair representation; however, the affidavits and exhibits establish defendants' defense and the motion for summary judgment is granted.

The basis for the claim of unfair prosecution of plaintiffs' grievances arises from REA's alleged violations of the rules of the collective bargaining agreement governing job abolishment, promotion and overtime. Each alleged violation will be considered separately.

In September, 1968, REA abolished the bulletined positions of "computer operator" and created a new position of "lead console operator" in order to use its computers to full potential. The new position was an "excepted" position, i. e., not subject to employee bidding and seniority rights. Mendes sought promotion to computer operator position many times but his application was denied by REA. When the position was eliminated, he protested the action to BRAC Local Lodge 2130 alleging REA violated Rule 1(b) of the bargaining agreement.[1] The Chairman of Local 2130 and the General Chairman of New York District of BRAC handled Mendes' grievance on the property of the carrier as required by the agreement and the Railway Labor Act, 45 U.S.C. § 153, First (i) (1970). When the highest official designated to act on employee grievances disallowed BRAC's request that the new position be bulletined, the union did not submit the grievance to the National Railroad Adjustment Board. Mendes, however, availed himself of his statutory right to do so. While the instant motion was pending, the court was advised of the decision of the neutral referee wherein he dismissed the claim for lack of jurisdiction of the dispute.

Plaintiff Evenger also filed a grievance with Local Lodge 2130 alleging violation of Rule 1(b). Unlike Mendes, Evenger held the position of "computer operator" and was displaced when "lead console operator" position was created. Evenger filed no complaint at that time but accepted a higher paying position as tape librarian. In 1970, the tape librarian position was eliminated. Soon thereafter, Evenger submitted his grievance to Local 2130 alleging that the removal of "computer operator" positions by REA violated Rule 1(b) and precluded him from exercising seniority rights over a bulletined position. Local 2130 re-

---

1. Rule 1(b) of the collective bargaining agreement, commonly known as the "scope rule," provides "Employees occupying positions listed on excepted list No. 1 will neither be required nor permitted to perform regularly routine agency work." Rule 1(a)(3) states that occupants of excepted positions are not covered by the collective bargaining rules.

fused to recognize his grievance, taking the position that the claim was not in accord with the collective bargaining agreement Rule 11(j) requiring members to file grievances in writing within 180 days of the carrier's alleged violation.

It is further alleged that BRAC failed properly to negotiate plaintiffs' grievances concerning promotions. Plaintiffs contend that REA violated Rule 3(a) by failing to promote them on the basis of seniority, fitness and ability.[2] Furthermore, they contend that employees are entitled to thirty working days in which to qualify for a new position after proper instruction pursuant to Rule 3(i).[3] The complaint sets forth no specific promotion violations involving Evenger and he submitted no grievance to his employer or local lodge.

Mendes, however, has had a long dispute with REA concerning his right to promotion. On each occasion when he applied for a computer operator position (before it was abolished) he failed the qualifying examination. Mendes claims that under Rule 3(a) seniority is the prime consideration for promotions and that he was denied his 30 day period of training. BRAC, although opposed to such examinations, recognized the carrier's right to administer tests to determine employee fitness. It refused, therefore, to handle the grievance beyond the propriety of the carrier. However, Mendes persisted and submitted his grievance to the Adjustment Board for binding determination. The neutral referee rendered his decision denying the claim, which decision is the subject of another action in this district filed on behalf of plaintiff Mendes.

Overtime work distribution is the final area of BRAC's alleged failure to represent plaintiffs' rights. It is alleged in the complaint that Mendes was not called for overtime work on 12 Saturdays in violation of Rule 4(e) of the collective bargaining agreement.[4] A similar claim is made on Evenger's behalf but the complaint specifies no time. Plaintiff Evenger never submitted a grievance to his local lodge as did Mendes. However, after looking into the matter for Mendes, BRAC accepted REA's denial of the claim. Mendes persisted and once again submitted the claim to the Adjustment Board. A neutral referee was appointed. In a recent determination, the referee held that the claim was without merit and accordingly denied it.

■ Defendants argue that the complaint should be dismissed because plaintiffs' grievances arising from the alleged violations have been submitted to the final and binding determination of the Adjustment Board. While defendants have correctly construed the law [Railway Labor Act, 45 U.S.C. § 153, First (m), (q) (1970); Gunther v. San

---

2. Rule 3(a) of the collective bargaining argument reads:
    Employees covered by these rules shall be in line for promotion. Promotion, assignments, and displacements shall be based on seniority (the prime consideration), fitness and ability (subject to paragraph (i) of the rule); fitness and ability being sufficient, seniority shall prevail. The word "sufficient" is intended to more clearly establish the right of the senior employee to bid in a new position or vacancy or displace a junior employee where two or more employees have adequate fitness and ability.

3. Rule 3(i) provides:
    Employees entitled to a bulletined position will be allowed thirty (30) work-
    ing days in which to qualify. They shall be given fair and proper instructions as to the duties of the position to which assigned, and failing to qualify, shall retain all their seniority rights and may bid on any bulletined positions but may not displace any regularly assigned employee.

4. Rule 4(e) of the agreement provides:
    The Management is under no obligation to fill positions on days which are not a part of any assignment, but where work is required to be performed on such a day, it may be performed by an available extra or unassigned employee who will otherwise not have forty (40) hours of work that week, in all other cases, by the regular employee.

Diego & Ariz. E. Ry. Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965)] they have misconstrued the pleadings. The complaint does not seek a review of the merits of plaintiffs' grievances; rather it alleges a cause of action for unfair representation and failure to prosecute those grievances. The allegations are sufficient to support the cause of action. Dismissal of the complaint for failure to state a cause of action, therefore, would be improper.

■ It is well established now that a union member has a right to commence a fair representation suit against his union.[5] His remedy, however, is closely circumscribed. A breach of the union's statutory duty of fair representation (in non-racial cases) occurs only when, after reviewing the merits of a member's grievance, the decision not to prosecute the claim is arbitrary, discriminatory or in bad faith. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). In *Vaca* the Supreme Court recognized the right of a union to supervise its grievance policy. It spoke as follows:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. . . . In providing for a grievance and arbitration procedure which gives the union

discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. Vaca v. Sipes, *supra*, 386 U.S. at 191, 87 S.Ct. at 917.

■ Applying these principles to the matter before us, it is evident that the union did not breach its duty to plaintiffs to bargain in good faith.[6] Each of Mendes' grievances was handled by the union on the carrier's property. In each instance, however, Mendes insisted upon an appeal to the Adjustment Board. Only after BRAC attempted to adjust each grievance, through letters, investigations and appeals, did it determine that each claim was insufficient to warrant further action. Despite this conclusion, the BRAC representative on the Adjustment Board deadlocked the dispute on three separate occasions causing the appointment of an impartial neutral referee to hear each claim, thereby facilitating Mendes' appeals. See Railway Labor Act, 45 U.S.C. § 153, First (*l*) (1970). While we do not pass upon the merits of Mendes' claims, the dismissal of two of the grievances by the Board lends support to BRAC's position that such claims were meritless and that its refusal to represent Mendes on appeal was not an arbitrary decision.

Furthermore, Mendes' discontent with his employer and union appears to have become something of a personal vendetta. Since 1967 he has made REA and BRAC litigate and relitigate the claims

5. The right evolves from a series of Supreme Court cases holding that a union has the implied duty, under applicable federal labor statutes, to fairly represent all members regardless of race. For cases involving the Railway Labor Act see Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed.

173 (1944); Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944).

6. It was stipulated at oral argument that the "Statement of the Case" in defendants' memorandum of law would be accepted by plaintiffs in lieu of an affidavit under General Rule 9(g) setting forth a concise statement of material facts to which there is no dispute.

underlying his complaint. Past forums include not only this court and the Adjustment Board, but also the Human Rights Division of the State of New York and the Federal Equal Employment Opportunity Commission.

The allegations of the complaint that defendants' actions evidence a policy of invidious and hostile discrimination against plaintiffs are unsubstantiated, and indeed, unjustified in light of the decisions of these civil rights boards. An evidentiary hearing on the issue of discriminatory practices is unnecessary. Suffice it to point out that an employee's personal beliefs that his claim is valid does not create an absolute duty on his union to handle the grievance and is certainly not determinative of the issues in an unfair representation suit. Vaca v. Sipes, *supra*; Pyzynski v. New York Central R. R., 421 F.2d 854 (2nd Cir. 1970).

The facts underlying Evenger's suit are even less persuasive. Evenger joins Mendes in alleging unfair representation of his grievances concerning job abolishment, promotions and overtime and, in all but the first matter, he has not even submitted a grievance to his union. The question posed is obvious: how can a member accuse his collective bargaining agent of unfair representation when he fails to inform his agent that he is aggrieved? The answer is likewise self-evident. He cannot. BRAC's refusal to recognize Evenger's claim that REA violated Rule 1(b) of the collective bargaining agreement was justified in light of Rule 11(j) of the same agreement which requires that claims for adjustment not antedate the grievance date more than 180 days. The violation of the agreement by REA, if such was a violation, occurred in September, 1968. Evenger submitted his grievance on or about January 17, 1971. The time limitation in the collective bargaining agreement is binding upon the union and it is not only fair but necessary. It insures prompt investigation and adjustment of grievances.

Finding no issue of material fact in dispute, the motion for summary judgment is granted, accordingly, to defendants BRAC, Devlin, Milone and Brannon.

So ordered.