For these reasons, the temporary stay order was VACATED.

Clarence R. HAYES, Plaintiff-Appellant,

v.

BROTHERHOOD OF RAILWAY AND AIRLINE CLERKS/ALLIED SERVICES DIVISION, Defendant-Appellee.

No. 83–1437

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 26, 1984.

Clarence R. Hayes, pro se.

Highsaw & Mahoney, Joseph Guerrieri, Jr., John J. Sullivan, Washington, D.C., for defendant-appellee.

Before RUBIN, JOLLY and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Appellant, Clarence R. Hayes, a former employee of the Western Weighing and Inspection Bureau (WWIB),[1] sued the Brotherhood of Railway Airline and Steamship Clerks, Freight Handlers, Express and Station Employees/Allied Services Division (BRAC), his exclusive bargaining representative while employed at WWIB. His *pro se* complaint alleged that BRAC had breached its duty of fair representation when, after processing three grievances he had filed against WWIB, to the highest designated official of that company, it declined to take the grievances to arbitration. The district court did not rule on the merits of Hayes' claims. Instead, it granted BRAC's motion for summary judgment on the ground that Hayes failed to exhaust all available internal union remedies and all available remedies under the Railway Labor Act, 45 U.S.C. §§ 151–188 (1976). Hayes appeals. Because the district court was correct in holding that Hayes was required to exhaust all available internal union remedies before filing his breach of fair representation suit, and on that holding only, we affirm.

I.

After his position as WWIB's agent in Galveston, Texas, was abolished effective August 1, 1978, Hayes filed three grievances against WWIB. Hayes' grievances alleged that WWIB had violated provisions of the then existing collective bargaining agreement between it and BRAC governing job abolishment and pay. As provided for by the Railway Labor Act (Act), BRAC processed Hayes' three grievances to WWIB's highest designated official. Hayes' grievances were denied. Hayes then asked BRAC to process his grievances to arbitration before the National Railroad Adjustment Board (NRAB). BRAC's vice president informed Hayes that BRAC would not proceed to arbitrate his claims before the NRAB. He advised Hayes that he had three alternatives. Hayes could (1) accept the decision, (2) appeal the decision to BRAC's president, or (3) take his case to

1. WWIB is controlled and operated by the Western Railroad Association.

the NRAB. Hayes, without appealing to BRAC's president, filed this suit. He also proceeded to arbitrate his grievances before the NRAB. On April 6, 1983, the district court granted BRAC's motion for summary judgment. On May 13, 1983, the NRAB rejected his grievances against WWIB. As of November 8, 1983, Hayes' motion for rehearing was pending before the NRAB.

## II.

■ The district court granted BRAC summary judgment because Hayes had failed to exhaust available Railway Labor Act remedies prescribed in section 3 of the Act; i.e., he had failed to allow the NRAB to complete the arbitration of his grievances. Thus one of two questions for decision today is whether, in the absence of exhaustion of proceedings before the NRAB, an employee can resort to a suit against his union for breach of its duty of fair representation.

In *Czosek v. O'Mara,* 397 U.S. 25, 27–28, 90 S.Ct. 770, 772–73, 25 L.Ed.2d 21 (1970), the Supreme Court made it very clear that employees can sue their union for breach of its duty of fair representation even though the employees had failed to exhaust their administrative remedies against their employer under the Act. The Court stated:

> And surely it is beyond cavil that a suit against the union for breach of its duty of fair representation is not within the jurisdiction of the National Railroad Adjustment Board or subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts.... The claim against union defendants for breach of their duty of fair representation is a discrete claim quite apart from the right of the individual employees expressly extended to them under the Railway Labor Act to pursue their employer before the Adjustment Board.

*Id.,* 397 U.S. at 28, 90 S.Ct. at 772–73 (citations and footnotes omitted).

This principle applies irrespective of the fact that the fair representation claims arise, as here, from the union's failure to process a grievance under a collective bargaining agreement. *Id. Conley v. Gibson,* 355 U.S. 41, 44–45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also Mendes v. Brotherhood of Railway, Airline and Steamship Clerks,* 353 F.Supp. 137, 139–40 (S.D.N.Y.1972) *aff'd,* 471 F.2d 1370 (2d Cir.), *cert. denied,* 411 U.S. 971, 93 S.Ct. 2167, 36 L.Ed.2d 695 (1973).

In the light of this precedent, the district court erred in granting summary judgment on the ground that Hayes had not exhausted his administrative remedies under the Railway Labor Act.

## III.

The district court also granted BRAC summary judgment because Hayes had failed to exhaust available internal union remedies before filing suit against the union. Article I, Section 17 of BRAC Protective Laws sets forth an internal procedure whereby an aggrieved union member may appeal a union officer's decision. Hayes did not resort to this procedure after he received notification through letters of May 18, 1981, and May 19, 1981, that BRAC's vice president had decided that his grievance should not be processed to arbitration before the NRAB. If Hayes had not filed for arbitration on two of his claims by July 6, 1981, and the other by August 4, 1981, he would have lost his right to do so. However, it is an uncontested fact that all time limits would have been preserved if he had chosen to pursue the internal union procedures. The second question for decision today is whether, before suit, Hayes should have proceeded to exhaust available internal union remedies relative to BRAC's refusal to submit his grievance to arbitration, which refusal, of course, is the sole basis of his section 301 claim against the union.

■ It is the general rule that before a suit against a union for breach of its duty of fair representation may be brought in the courts, the member must first exhaust the available internal union remedies, or show an adequate reason for not doing so.

*Clayton v. United Auto Workers,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

In *Clayton,* which dealt with the Labor Management Relations Act, the Court stated that there were "at least" three relevant factors in determining whether exhaustion of internal union procedures would be required as a prerequisite to fair representation litigation:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks ... and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Id.* at 689, 101 S.Ct. at 2095.

The Court went on to say:

> Where internal union appeals procedures can result in either complete relief to an aggrieved employee *or* reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum. Thus, if the employee received the full relief he requested through internal procedures, his § 301 action would become moot, and he would not be entitled to a judicial hearing. Similarly, if the employee obtained reactivation of his grievance through internal union procedures, the policies underlying [*Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) ] would come into play, and the employee would be required to submit his claim to the collectively bargained dispute-resolu-

tion procedures. In either case, exhaustion of internal remedies could result in final resolution of the employee's contractual grievance through private rather than judicial avenues. (Emphasis supplied.)

*Id.* at 692, 101 S.Ct. at 2097 (footnote omitted).

■ The record does not reveal any hostility on the part of those union officials who would have heard Hayes' appeal. The second inquiry is whether the relief available through BRAC's internal procedures would be adequate to warrant imposition of the exhaustion requirement. While it is clear that the internal union appeals procedures would have been inadequate to award Hayes the full relief he seeks in this suit, that is, compensatory and punitive damages, it was adequate to give him the only relief he was seeking before the union, which was nothing more than union representation before the NRAB. In any event, for the following reason Hayes' failure to exhaust cannot be excused: Hayes' basic grievances could have been reactivated in the arbitration process because his resort to the internal union procedures could have resulted in the union's agreeing to submit his grievances to arbitration in a timely manner. A successful appeal through the internal union procedures would have rendered moot the claim he is now presenting against the union in this case. On this basis, the case is different from that presented by Clayton. There, by the time the employee had learned of the union's decision not to submit his grievance to arbitration, the time limit for doing so under the collective bargaining agreement had expired. In this case, it is uncontroverted that Hayes could have preserved all time limits for submitting the case to the NRAB for arbitration while he pursued internal remedies in an effort to reverse the vice president's decision not to submit his grievances to arbitration.[2] Finally, the third

---

2. We note that the Seventh Circuit has also held that a union member must exhaust his internal union appeals procedures as a precondition to a section 301 suit where those proce-

dures could result in either complete relief *or* reactivation of his grievance. It stated that "[t]he logic requiring complete relief compatible with § 301 standards does not apply where

factor for consideration under *Clayton* does not work to Hayes' prejudice. If he had exhausted his internal remedies by seeking arbitration at the highest level of the union and had it been denied, he could still have brought, without unreasonable delay to his right to a judicial hearing, a timely lawsuit on the merits of his claim.

In conclusion, Hayes should have exhausted internal union procedures before he filed his breach of duty of fair representation suit against BRAC. Because he did not do so, the district court properly granted summary judgment in favor of BRAC. It is on this basis that the decision of the district court is affirmed.[3]

AFFIRMED.

the grievance can be reinstated through the internal union appeals procedure." *Miller v. General Motors Corp.,* 675 F.2d 146 (7th Cir. 1982).

3. Upon reconsideration, Hayes' motion to be allowed to proceed in forma pauperis and for appointment of counsel is again denied.