ADKINS, J.
Maryland law has long recognized the rule that a union member must exhaust the union’s internal remedies before filing suit in court. Walsh v. Commc’ns Workers of Am., Local 2336, 259 Md. 608, 612, 271 A.2d 148, 150 (1970). If these procedures are procedurally or substantively inadequate, however, exhaustion is excused. Id. In this case, we consider whether union remedies are inadequate when they do not provide the monetary damages a union member[1] seeks *562 when he sues his union and a fellow union member for defamation.
FACTS AND LEGAL PROCEEDINGS
Respondent, William T. Lovelace, Jr., worked for the Maryland Transit Administration (“MTA”) and was a member of Petitioner, Amalgamated Transit Union, Local 1300 (“Local 1300”).[2] Lovelace and Petitioner, David McClure (collectively with Local 1300, “the Union”), served together as officers on Local 1300’s Executive Board between 2007 and 2010—Love-lace as Financial Secretary, a position to which he was first elected in 2001, and McClure as President. During the three years they served together, Lovelace and McClure often disagreed about Local 1300’s financial matters, and became “political enemies.” When both men ran for reelection in 2010, McClure prevailed, and Lovelace was defeated. Lovelace blamed his defeat on the allegedly false and defamatory statements that McClure made prior to and during the campaign.
Lovelace filed a defamation action in the Circuit Court for Baltimore City against the Union, seeking $1 million in compensatory damages and $3 million in punitive damages for his defeat in the 2010 election, reputational injury, pain and suffering, and emotional distress. He alleged that between 2007 and 2010, McClure, acting within the scope of his employment, published—to numerous Local 1300 members—false and defamatory statements accusing Lovelace of stealing from Local 1300 and misappropriating funds. Lovelace averred *563 that in several instances, McClure specifically implored others not to reelect Lovelace because he was stealing from Local 1300. Lovelace alleged that McClure knew the defamatory statements were false or acted with reckless disregard as to whether they were false. Regarding Local 1300’s vicarious liability, Lovelace alleged that it ratified McClure’s statements because it had knowledge of the statements but failed to adequately investigate their truthfulness or stop them.
The Union filed Motions to Dismiss, asserting, in part, that Lovelace failed to exhaust Local 1300’s internal remedies before filing suit. The Circuit Court denied the Motions, concluding that Lovelace was not required to exhaust Local 1300’s remedies because without the availability of monetary damages, the remedies were inadequate as a matter of law.
The case was tried before a jury in April and May 2012. Several witnesses testified that McClure told them that Lovelace was stealing from Local 1300. Ultimately, the jury rendered a verdict in Lovelace’s favor, finding that McClure defamed Lovelace with actual malice and that Local 1300 was vicariously liable for the defamation. The jury awarded $200,000 for injury to reputation, $60,000 for financial loss, and $75,000 for mental anguish. The jury also awarded punitive damages—$7,500 against McClure and $82,500 against Local 1300.
The Union appealed, contending, in part, that the trial court erred when it denied their Motions to Dismiss because Lovelace was required to exhaust Local 1300’s internal remedies before filing suit. See McClure v. Lovelace, 214 Md.App. 716, 725, 78 A.3d 934, 939 (2013). Lovelace responded that he was not required to pursue these remedies because they were “procedurally and substantively inadequate.” Id. In a reported opinion, the Court of Special Appeals affirmed the Circuit Court, concluding that Local 1300’s internal remedies were inadequate because they could not provide the monetary damages Lovelace sought. Id. at 735, 78 A.3d at 945. The Union filed a Petition for Writ of Certiorari, which this Court granted on February 21, 2014, to answer the following question:
*564 Whether an internal union remedy is “inadequate,” thus excusing a plaintiff from exhausting internal union procedures for resolving a dispute before seeking relief in court, if it does not provide the monetary damages the plaintiff seeks?
Because we answer yes, we shall affirm the judgment of the Court of Special Appeals.
STANDARD OF REVIEW
In reviewing the denial of a motion to dismiss, “we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings.” Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins., 306 Md. 754, 768, 511 A.2d 492, 500 (1986). The facts we may consider are limited “to the four corners of the complaint and its incorporated supporting exhibits, if any.” Converge Servs. Grp. v. Curran, 383 Md. 462, 475, 860 A.2d 871, 879 (2004); accord Nickens v. Mount Vernon Realty Grp., 429 Md. 53, 62, 54 A.3d 742, 748 (2012) (“Ordinarily, when a trial court purports to grant a motion to dismiss, we review that action based solely on the allegations contained within the four corners of the complaint----”). Pursuant to Maryland Rule 2-322(c), however, “when a trial judge is presented with factual allegations beyond those contained in the complaint to support or oppose a motion to dismiss and the trial judge does not exclude such matters, then the motion shall be treated as one for summary judgment.” Nickens, 429 Md. at 62-63, 54 A.3d at 748 (internal quotation mark and citation omitted); see Md. Rule 2-322(c); see also Ray v. Mayor of Balt., 430 Md. 74, 91, 59 A.3d 545, 555 (2013) (treating motion to dismiss as motion for summary judgment because trial court considered materials outside the pleadings).
Here, Lovelace did not attach the Local 1300 Constitution to his Complaint or Amended Complaint as a supporting exhibit. The Union attached the Local 1300 Constitution to their Motions to Dismiss, and the Circuit Court judge consid *565 ered it when denying the Motions. Therefore, we will treat the Motions to Dismiss as Motions for Summary Judgment[3] and review the Circuit Court’s denial of summary judgment as a matter of law.[4] See Heat & Power Corp. v. Air Prods. & Chems., Inc., 320 Md. 584, 591, 578 A.2d 1202, 1206 (1990) (“[T]he standard for appellate review of a trial court’s grant or denial of a motion for summary judgment is whether the trial court was legally correct.”).
DISCUSSION
The Union asserts that when the Court of Special Appeals concluded that the Union’s internal remedies were inadequate, it “held, in effect, that an internal union remedy could be adequate only if it provided the identical form of relief that the litigant sought in the subsequent civil action.” (Emphasis in original.) The Union contends that in order to be adequate, internal union remedies need not provide an identical remedy—they need only permit a union member to avoid or mitigate an injury.
*566 Petitioners then argue that § 22.1 and § 14.8 of the Local 1300 Constitution are adequate remedies because they could have restored Lovelace’s reputation within the union community and led to his reelection. Section 22.1 provides a mechanism for a Local 1300 member to be charged with and disciplined for misconduct:
Any officer or member may be charged with specific activities involving: a violation of any specific provision of the Constitution and General Laws or the bylaws of the member’s L[ocal] U[nion]; gross disloyalty or conduct unbecoming a member; malfeasance or nonfeasance in office; financial malpractice; corrupt or unethical practices or racketeering; dual unionism, decertification or secession; or a violation of duly established and applicable rules, regulations, policies or practices of a [Local Union.]
The charges are tried before a Local 1300 trial board. Any Local 1300 member charged under § 22.1 may be suspended from office, suspended or expelled from union membership, fined, declared ineligible for office, or otherwise disciplined. Petitioners assert that had Lovelace successfully pursued charges under § 22.1, the ensuing public trial would have cleared his name and vindicated his reputation, thereby permitting him to compete on a level playing field during the 2010 election.
Section 14.8 permits Local 1300 members to “challenge the conduct or results of an election.” It does not limit the grounds upon which an election may be challenged. The Union contends that had Lovelace successfully contested the 2010 election on the grounds that it was tainted by McClure’s defamatory statements, Local 1300 could have determined that Lovelace had been unfairly slandered during the election campaign and ordered that the election be rerun.
Finally, the Union cautions that the conclusion of the Court of Special Appeals undermines the exhaustion requirement and the policies on which it rests—union self-government and judicial economy. Specifically, Petitioners argue that if union members could seek monetary damages in a civil suit without *567 first pursuing internal union remedies that could have avoided or mitigated the injury, union members “would have a powerful incentive to skip the internal union procedures entirely.”
In response, Lovelace urges us to affirm the Court of Special Appeals. He contends that § 22.1 and § 14.8 of the Local 1300 Constitution provide inadequate relief because by not providing monetary damages, they do not offer “complete relief’ as required by the holding of the Supreme Court of the United States in Clayton v. Int’l Union, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).
Clayton And McPhetridye
In the four decades since this Court decided Walsh, we have devoted very little, if any, attention to the question of what constitutes an “inadequate” internal union remedy. Because Congress codified the exhaustion requirement in the Labor Management Reporting and Disclosure Act (“LMRDA”),[5] 29 U.S.C. § 411(a)(4) (2012),[6] the majority of cases addressing the inadequacy of internal union remedies arise in federal courts.
*568 Petitioners rely, almost exclusively, on two federal cases: (1) Clayton, supra; and (2) McPhetridge v. IBEW, Local Union No. 53, 578 F.3d 886 (8th Cir.2009).[7] They assert that “as Clayton makes clear, and as McPhetridge explicitly holds, an internal union procedure is not inadequate because of the unavailability of monetary damages if it offers a remedy that allows the union member to avoid or mitigate the injury for which monetary damages are sought in litigation.”
We first consider Clayton, the seminal Supreme Court case addressing whether union members must exhaust internal union remedies. There, after being discharged from his employment due to alleged misbehavior, Clayton asked his union representative to file a grievance on his behalf. Clayton, 451 U.S. at 682, 101 S.Ct. at 2091-92, 68 L.Ed.2d 538. The union pursued the grievance but ultimately abandoned it before arbitration. Id., 101 S.Ct. at 2092, 68 L.Ed.2d 538. Although the union’s internal procedures permitted him to appeal the decision not to pursue arbitration, Clayton, instead, filed suit in federal district court under § 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a).[8] Id. at 683, 101 *569 S.Ct. at 2092, 68 L.Ed.2d 538. Alleging that the union breached its duty of fair representation and the employer breached the collective-bargaining agreement by terminating him without just cause, id., 101 S.Ct. at 2092, 68 L.Ed.2d 538, he sought reinstatement from the employer and monetary damages from both the employer and the union, id. at 690, 101 S.Ct. at 2096, 68 L.Ed.2d 538. As an affirmative defense, the employer and the union pleaded failure to exhaust the union’s internal appeals procedures. Id. at 683, 101 S.Ct. at 2092, 68 L.Ed.2d 538. The federal district court sustained this defense and dismissed the suit, concluding that the internal appeals procedures were adequate as a matter of law and Clayton had failed to exhaust them. Id. at 683-84, 101 S.Ct. at 2092, 68 L.Ed.2d 538.
Following an appeal to the United States Court of Appeals for the Ninth Circuit, the Supreme Court granted certiorari to resolve the issue of when a union member is required to exhaust internal union remedies before filing suit. Id. at 685, 101 S.Ct. at 2093, 68 L.Ed.2d 538. The Court declined to impose a universal exhaustion requirement, instead outlining three factors a court should consider when deciding whether to require exhaustion:
[Fjirst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee’s grievance or to award him, the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee’s opportunity to obtain a judicial hearing on the merits of his claim.
*570 Id. at 689, 101 S.Ct. at 2095, 68 L.Ed.2d 538 (emphasis added). If any of these factors exists, “a court may properly excuse the employee’s failure to exhaust.” Id. The Court applied the second factor (the “Clayton inadequacy test”), holding that “where an internal union appeals procedure cannot result in reactivation of the employee’s grievance or an award of the complete relief sought in his § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union.” Id. at 685,101 S.Ct. at 2093, 68 L.Ed.2d 538. Although the union’s internal appeals procedures could provide “at least some monetary relief,” the Court observed that “the union can neither reinstate Clayton in his job ... nor reactivate his grievance.” Id. at 691, 101 S.Ct. at 2096, 68 L.Ed.2d 538. Consequently, the Court held that the union’s internal appeals procedures were inadequate and Clayton was not required to exhaust them before suing the union or the employer. Id. at 696, 101 S.Ct. at 2099, 68 L.Ed.2d 538.
Without disputing that Lovelace never pursued a grievance, Petitioners nevertheless focus on the first part of the Clayton inadequacy test and equate reactivating a grievance[9] with *571 avoiding or mitigating an injury. Specifically, Petitioners argue that reactivating a union member’s grievance avoids or mitigates the member’s damages by restoring the member to the situation he would have been in had the union not abandoned the grievance. Relying on this premise, they ask us to read Clayton broadly, contending that it
stands squarely for the proposition that, to be adequate, an internal union remedy need not necessarily provide for money damages, even if that is what the plaintiff seeks from the judicial forum, as long as the union’s procedures—if successfully pursued—would permit the member to avoid or mitigate the injury for which damages are sought in court.
(Emphasis added.)
We decline, however, to read Clayton so broadly. Most of the federal cases that have cited Clayton have not utilized the standard of “avoiding or mitigating” an injury to measure what is an adequate remedy. See, e.g., Bell v. DaimlerChrysler Corp., 547 F.3d 796, 807 (7th Cir.2008) (measuring what is an adequate remedy based on whether the union can reactivate a grievance or award complete relief); Bassett v. Local Union No. 705, 773 F.2d 932, 937 (7th Cir.1985) (same); Scoggins v. Boeing Co., 742 F.2d 1225, 1230 (9th Cir.1984) (same); Keiper v. United Auto. Workers’ Union, Local 677, 867 F.Supp. 298, 302 (E.D.Pa.1994) (measuring what is an adequate remedy based on whether the union can reactivate a grievance); Williams v. United Auto Workers Local 501, AFL-CIO, 841 F.Supp. 499, 504 (W.D.N.Y.1993) (measuring what is an adequate remedy based on whether the union can *572 reactivate a grievance or award complete relief); Nanney v. Chrysler Corp., 600 F.Supp. 1248, 1254 (D.Del.1984) (measuring what is an adequate remedy based on whether the union can reactivate a grievance). Likewise, at least two of our sister states have applied the Clayton inadequacy test, and neither of them have utilized that standard. See Murad v. Prof'l & Admin. Union Local 1979, 239 Mich.App. 538, 546, 609 N.W.2d 588, 592-93 (2000) (measuring what is an adequate remedy based on whether the union can reactivate a grievance or award complete relief); Swieton v. City of Chi., 129 Ill. App.3d 379, 384-85, 84 Ill.Dec. 543, 472 N.E.2d 503, 507 (1984) (measuring what is an adequate remedy based on whether the union can award complete relief).
We now turn to McPhetridge, Petitioners’ primary authority. There, the union charged three members with working for a non-union contractor. McPhetridge, 578 F.3d at 888. The union notified the members that the union trial board would conduct a hearing to consider the charges. Id. The members did not attend the hearing. Id. After the trial board upheld the charges and fined the members $5,000 each, the union notified the members of the trial board’s decision and advised them that under the union constitution, they could appeal the decision within forty-five days. Id. Instead of appealing, however, the members filed suit in federal court, alleging, in part, that the union violated the LMRDA by denying their due process rights during the disciplinary proceedings.[10] Id. at 889. The United States District Court for the District of Missouri dismissed the free speech claim on the merits and dismissed the due process claim because the members did not exhaust the union’s internal remedies. Id.
*573 On appeal, the United States Court of Appeals for the Eighth Circuit reviewed the district court’s decision to require exhaustion. The members argued that their failure to exhaust should be excused because the union’s internal remedies could not provide them complete relief, specifically, the monetary damages they sought in their suit. Id. at 891. The court disagreed, concluding that
had [the members] attended the Trial Board hearing and successfully raised the substantive and procedural issues now urged in this lawsuit, they would have avoided all injury. Moreover, successful appeals of the Trial Board’s adverse decisions would have abated the fines and relieved Plaintiffs of most or all the mental anguish, attorneys fees, and forced resignations now claimed as compensatory damages.
Id. The court affirmed the district court’s dismissal of the due process claims, ruling that the members were required to exhaust the union’s internal remedies.
McPhetridge explicitly addressed the issue of avoiding or mitigating an injury. We agree with the Union that McPhetridge required the union members to exhaust the union’s internal remedies, and used Petitioners’ standard—whether those remedies could have “avoided or mitigated” the injuries claimed by the members.[11] Nevertheless, as we explain below, McPhetridge does not carry the day for the Union.
First, McPhetridge is an outlier-—it is the only federal case Petitioners cite (and we have found no others), in which a federal court analyzing whether internal union remedies were inadequate under Clayton addressed whether the remedies could “avoid or mitigate” damages. In all the other federal cases we have reviewed, the courts applied the Clayton inadequacy test to ascertain whether the unions’ internal remedies could reactivate a grievance or provide complete relief. See, e.g., Bell, 547 F.3d at 807 (“Clayton expressly (and repeatedly) *574 states that appeals which can result in either the reactivation of a grievance or the provision of full relief must ordinarily be exhausted.” (emphasis in original)); Hammer v. Int’l Union, United Auto., Aerospace & Agr. Implement Workers of Am., 178 F.3d 856, 859 (7th Cir.1999) (“[The union’s] internal procedures could ultimately have resulted in both money damages and the reinstatement of Hammer’s grievance—complete relief and more.”); Rogers v. Bd. of Educ. of Buena Vista Sch., 2 F.3d 163, 167 (6th Cir.1993) (holding that the district court properly dismissed the plaintiffs complaint for failure to exhaust his internal union remedies because, although plaintiffs grievance could not be reactivated, the union could award all the money damages the plaintiff sought); Bassett, 773 F.2d at 937 (“Because [the union’s] remedies were inadequate either to provide plaintiffs complete relief ... or to reactivate [the union member’s] grievance ... we must hold that plaintiffs were not required to exhaust these remedies.... ”); Hayes v. Bhd. of Ry. & Airline Clerks, 727 F.2d 1383, 1386 (5th Cir.1984) (requiring exhaustion because “while it is clear that the internal union appeals procedures would have been inadequate to award [the union member] the full relief he seeks in this suit, that is, compensatory and punitive damages,” the union member’s “basic grievances could have been reactivated in the arbitration process.”); Curry v. Ford Motor Co., 646 F.Supp. 261, 264 (W.D.Ky.1983) (granting summary judgment in favor of defendants because the union member “not only could obtain reactivation of his grievance, but could appeal within the UAW appeals process for rei[m]bursement of his lost wages for the time the grievance was withdrawn[.]”); Mabane v. Metal Masters Food Serv. Equip. Co., 541 F.Supp. 981, 987 n. 10 (D.Md.1982) (concluding exhaustion would not be required because the union had no internal remedies that could reactivate the employees’ grievances or award them complete relief). Thus, federal case law provides no basis for endorsing the McPhetridge court’s analysis.
Second, the facts of McPhetridge are distinguishable from this case. Local 1300’s internal procedures could not have *575 avoided all the damages Lovelace suffered and it is uncertain whether they could have mitigated his damages.
In McPhetridge, if the union members had prevailed before the trial board, the union would not have imposed the fines. Here, there is no Local 1300 procedure that could have prevented McClure from making the false and defamatory statements about Lovelace. Also, the jury found that McClure defamed Lovelace with actual malice[12]. When a plaintiff proves, by clear and convincing evidence, that he was defamed with actual malice, damages are presumed. See Jacron Sales Co. v. Sindorf 276 Md. 580, 601, 350 A.2d 688, 700 (1976) (concluding that a plaintiff cannot recover presumed damages unless he establishes actual malice); see also Samuels v. Tsehechtelin, 135 Md.App. 483, 549-50, 763 A.2d 209, 245 (2000) (stating that “damages are presumed when a plaintiff can demonstrate actual malice, by clear and convincing evidence, even in the absence of proof of harm”). Therefore, no Local 1300 procedure could have adequately avoided or compensated for all of Lovelace’s damages because once he proved actual malice, the jury was justified in awarding damages without further proof of loss.
Additionally, in McPhetridge, it was certain that the union could mitigate the members’ damages because the union had the authority to revoke the fines it had imposed. Here, while there is a possibility that pursuing § 22.1 and § 14.8 of the Local 1300 Constitution might have mitigated some of Lovelace’s damages, any mitigation is uncertain and speculative. Petitioners argue that had Lovelace successfully brought charges against McClure under § 22.1 and challenged the 2010 election under § 14.8, his reputation within the union community might have been restored and he might have won reelection. This argument consists of several layers of specu *576 lation—it assumes that a sufficient number of union members would learn about the outcome of the union trial, change their opinions about Lovelace, and change their votes to reelect him. Although the Union can control whether an election is rerun, the Union ultimately has no control over Lovelace’s reputation, either within the union community or without. Nor could it control the results of a new election. Also, the record does not reveal any mechanism in the Local 1300 Constitution for informing all of the union’s membership about the results of a union trial. Thus, unlike McPhetridge, it is uncertain whether Local 1300’s internal remedies would have mitigated any of the damages Lovelace claimed.
Applying The Clayton Inadequacy Test
In the state and federal cases cited, supra, the courts applied the Clayton inadequacy test when determining whether exhaustion is required in suits claiming breach of the duty of fair representation. Although Lovelace, unlike Clayton, did not sue for breach of the duty of fair representation, we will apply the Clayton inadequacy test to this case because Maryland shares one of the major policy objectives influencing the Supreme Court’s analysis in Clayton—encouraging private resolution of disputes.
The Clayton Court reasoned that “where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes.” Clayton, 451 U.S. at 692, 101 S.Ct. at 2097, 68 L.Ed.2d 538. Maryland’s support for arbitration demonstrates that it is also concerned with encouraging the private resolution of disputes. See Shailendra Kumar, P.A. v. Dhanda, 426 Md. 185, 208, 43 A.3d 1029, 1042 (2012) (“There is no doubt that arbitration is favored and encouraged in Maryland because it provides an informal, expeditious, and inexpensive alternative to conventional litigation.” (citation and internal quotation marks omitted)); Cheek v. United Healthcare of Mid-Atl., Inc., 378 Md. 139, 152, 835 A.2d 656, 664 (2003) (“Maryland’s Arbitration Act *577 expresses the legislative policy favoring enforcement of agreements to arbitrate.” (citation and internal quotation marks omitted)). The Clayton inadequacy test encourages the private resolution of disputes because, when internal union remedies reactivate a member’s grievance or provide complete relief, there is no need for the member to seek judicial resolution of his dispute.
Here, the first part of the Clayton inadequacy test does not apply because Lovelace did not pursue a grievance. Therefore, we look to the second part of the test: whether Local 1300’s remedies provide complete relief. Numerous federal courts applying the Clayton inadequacy test have concluded that internal union remedies do not offer complete relief if they do not provide monetary damages. See, e.g., Maddalone v. Local 17, United Bhd. of Carpenters of Am., 152 F.3d 178, 187 (2d Cir.1998) (excusing exhaustion where the union failed to show that it could have paid the compensatory or punitive damages that the union member sought); Achilli v. John J. Nissen Baking Co., 989 F.2d 561, 564 (1st Cir.1993) (excusing exhaustion where the union failed “to demonstrate the existence of an internal remedy that might have given [the union member] the damages he seeks”); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1183 (9th Cir.1988) (excusing exhaustion where the union failed to show that it could award monetary damages); Cantrell v. Int’l Bhd. of Elec. Workers, Local 2021, 860 F.Supp. 783, 786 (W.D.Okla.1991) (excusing exhaustion where the union failed to show that the union member could have received back pay or a monetary assessment), aff'd, 32 F.3d 465 (10th Cir.1994); cf. Chapman v. UAW Local 1005, 670 F.3d 677, 685-86 (6th Cir.2012) (requiring exhaustion where the union’s Preliminary Review Board had the authority to require the union to pay money damages, back pay, or both), cert. denied, -U.S.-, 133 S.Ct. 438, 184 L.Ed.2d 260 (2012); Rogers, 2 F.3d at 167 (requiring exhaustion where the union’s internal procedures provided monetary damages); Tinsley v. UPS, 665 F.2d 778, 780 (7th Cir.1981) (same); Murman v. Renold Power Transmission Corp., 632 F.Supp. 853, 857 (M.D.Pa.1985) (“[T]he [u]nion *578 would have been able to afford plaintiff complete relief since [it] has the power to grant monetary damages.”).
Lovelace sought compensatory and punitive damages for his defeat in the 2010 election, reputational injury, pain and suffering, and emotional distress. Neither § 22.1 nor § 14.8 of the Local 1300 Constitution, however, provide monetary damages. Thus, we conclude that Local 1300’s internal remedies were inadequate and Lovelace was not required to exhaust them.
CONCLUSION
In conclusion, we hold that when a union member claims that his union and a fellow union member are liable for defaming him and seeks monetary damages, if the union’s internal remedies do not provide monetary damages, they are inadequate and the union member is not required to exhaust them. Accordingly, we affirm the judgment of the Court of Special Appeals.
JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.
McDONALD and WATTS, JJ., concur.
HARRELL, J., dissents.

. We recognize that "union members” and "union officers” are often addressed as separate groups. See, e.g., Batson v. Shiflett, 325 Md. 684, 712, 602 A.2d 1191, 1205 (1992) (discussing the dispute between the union member and union officers in Farmer v. United Bhd. of Carpenters, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977)). In this opinion, however, when we use the term "union members” we are *562 referring to all those employees who are part of a union, regardless of whether they have been elected as officers.

. Local 1300 serves the Greater Baltimore region and is one of 264 local unions in 44 states and nine provinces of Canada that compose the Amalgamated Transit Union. About Local 1300, History of Amalgamated Transportation Union, A.T.U. Local 1300 Baltimore MD, http:// atu-locall300.com/framesetl.htm (last visited Dec. 9, 2014). With approximately 190,000 members, the Amalgamated Transit Union, founded in 1892, is the largest labor organization representing transit workers in the United States and Canada. Id.

. Pursuant to Maryland Rule 2-322(c), a motion to dismiss may only be treated as one for summary judgment if all the parties are “given reasonable opportunity” to present all pertinent material. Here, because the contents of the Local 1300 Constitution are undisputed, both parties were given a reasonable opportunity to present all pertinent material.

. This Court has held that “a denial (as distinguished from a grant) of a summary judgment motion, as well as foregoing the ruling on such a motion either temporarily until later in the proceedings or for resolution by trial of the general issue, involves not only pure legal questions but also an exercise of discretion as to whether the decision should be postponed until it can be supported by a complete factual record[J” Metro. Mortgage Fund, Inc. v. Basiliko, 288 Md. 25, 29, 415 A.2d 582, 584 (1980). “[0]n appeal, absent clear abuse ... the manner in which this discretion is exercised will not be disturbed.” Id. Here, when the hearing judge ruled on the Union's Motions for Summary Judgment the factual record was complete with respect to the issue under consideration because the contents of the Local 1300 Constitution was undisputed. Therefore, the hearing judge did not exercise discretion to deny the Motions until there was a complete factual record, but rather only answered a pure legal question. Accordingly, the abuse of discretion standard does not apply and we will review the hearing court’s pure legal determination as a matter of law.

. “The Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) provides standards for the reporting and disclosure of certain financial transactions and administrative practices of labor organizations and employers; the protection of union funds and assets; the administration of trusteeships by labor organizations; and the election of officers of labor organizations. The Act also guarantees certain rights to all union members.” The Labor-Management Reporting and Disclosure Act of 1959, United States Department of Labor, http://www. dol.gov/compliance/laws/comp-lmrda.htm (last visited Dec. 9, 2014).

. 29 U.S.C. § 411(a)(4) (2012) protects the right of union members to sue their union but requires union members to exhaust internal union remedies before filing suit:
No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any *568 officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

. Petitioners also cite Fabian v. Freight Drivers & Helpers Local No. 557, 448 F.Supp. 835 (D.Md.1978) and Winter v. Local Union No. 639, 569 F.2d 146 (D.C.Cir.1977). In Fabian, the district court concluded that the union’s "procedures are not rendered inadequate because of the unavailability of the money damages requested here by the plaintiffs.” 448 F.Supp. at 839 (citation omitted). In Winter, the federal appellate court, acknowledging that "Winter probably could not have obtained money damages through union disciplinary channels,” nevertheless held that exhaustion was required because “Winter could ... have obtained some of what he seeks, ... an injunction, by a favorable outcome in the union proceedings.” 569 F.2d at 149. These two cases, however, were decided before Clayton v. Int'l Union, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Because Clayton created a new test for whether an internal union remedy is inadequate, Fabian and Winter are not persuasive.

. The Labor Management Relations Act, 1947, § 301(a), 29 U.S.C. § 185(a) (2012), provides the basis for a union member’s right to sue *569 the employer for a violation of the collective bargaining agreement and grants federal courts jurisdiction to enforce collective bargaining agreements:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

. Many collective bargaining agreements between labor unions and employers provide that employees who are union members may only be terminated for just cause. See, e.g., Childers v. Chesapeake & Potomac Tel. Co., 881 F.2d 1259, 1260 (4th Cir.1989) ("The terms and conditions of [the union member's] employment with [the employer] were governed by a collective bargaining agreement between [the employer] and the union, which prohibited termination of employees without 'just cause’.... ”). In many instances, when a union member believes that he has been terminated without just cause, he will ask his union to file a grievance with the employer on his behalf. See, e.g., Clayton, 451 U.S. at 682, 101 S.Ct. at 2091-92, 68 L.Ed.2d 538. Collective bargaining agreements often outline a multi-step process for pursuing and resolving grievances, with the final step being arbitration. See, e.g., Vaca v. Sipes, 386 U.S. 171, 175 n. 3, 87 S.Ct. 903, 909 n. 3, 17 L.Ed.2d 842 (1967) (discussing the collective bargaining agreement’s five-step procedure for handling grievances). If the union elects not to pursue arbitration of the grievance or abandons the grievance at one of the earlier steps in the process, the member can sue his union for breach of the duty of fair representation. See Clayton, 451 U.S. at 683, 101 S.Ct. at 2092, 68 L.Ed.2d 538. When a member sues his union under this cause of action, one of the remedies the union can provide is reactivating the member’s grievance. A member’s grievance is "reactivated” *571 when it is reinstated in the grievance procedure at the step at which the union abandoned the original grievance. See Nanney v. Chrysler Corp., 600 F.Supp. 1248, 1253 n. 5 (D.Del.1984) (stating that “a reactivated grievance is reinstated in the grievance procedure at the step at which the original disposition of the grievance occurred” (internal quotation marks omitted)); see also Bassett v. Local Union No. 705, 773 F.2d 932, 936 (7th Cir.1985) ("The [Supreme] Court’s discussion of reactivation in Clayton is directed exclusively to the situation where a union can resubmit the plaintiff's grievance to some kind of collectively bargained dispute-resolution procedures.” (citation and internal quotation marks omitted)).

. 29 U.S.C. § 411(a)(5) (2012) outlines the due process rights of union members:
No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

. These injuries originated from the fines the union ordered the members to pay.

. " 'Actual malice,’ sometimes referred to as constitutional malice, is established by clear and convincing evidence that a statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.’ ” Batson, 325 Md. at 728, 602 A.2d at 1213 (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26, 11 L.Ed.2d 686, 706 (1964)).